812 A.2d 1218

Jerry ATCOVITZ and Roslyn Atcovitz, H/W,

v.

GULPH MILLS TENNIS CLUB, INC, JKST, Inc. and
Gulph Mills/JKST Tennis Club, Inc., Lafayette
Ambulance Rescue Squad I.

Appeal of Gulph Mills Tennis Club, Inc., JKST,
Inc. and Gulph Mills/JKST Tennis Club.

Supreme Court of Pennsylvania.

Argued April 8, 2002.

Decided Dec. 20, 2002.

582

Lucien R. Tharaud, Philadelphia, for Gulph Mills Tennis Club, Inc.

Charles W. Craven, Philadelphia, for Gulph Mills/JKST Tennis Club, Inc.

Alfred Anthony Brown, J. Craig Currie, Philadelphia, for Roslyn Atcovitz, H/W Jerry Atcovitz.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## OPINION

Chief Justice ZAPPALA.

We granted allowance of appeal in this case to determine whether a tennis club owes a duty of care to its members to acquire and maintain an automated external defibrillator, hereinafter "AED," on its premises for emergency use.[1] For the reasons that follow, we hold that such clubs do not owe a duty to have an AED available on their premises.

On January 16, 1996, Jerry Atcovitz suffered a stroke, secondary to a heart attack, while playing tennis at the Gulph Mills Tennis Club.[2] Within a minute of his collapse, two tennis club members administered cardiopulmonary resuscitation and called for an ambulance. Approximately ten minutes later, emergency medical technicians arrived and administered a series of defibrillation shocks with an AED and transported Atcovitz to a hospital.[3] Although he survived the incident, Atcovitz "sustained severe and permanent injuries, including anoxic encephalopathy with multiple permanent central nervous system disorders. He is no longer able to think or concentrate, is no longer able to walk or get out of bed unassisted, and requires assistance in virtually every aspect of his life." R. 42a–43a.

1.  An AED is "[a] portable device that uses electric shock to restore a stable heart rhythm to an individual in cardiac arrest." 42 Pa.C.S. § 8331.2(f).

2.  Atcovitz was then sixty-four years old and had a twenty-year history of heart problems, including a previous heart attack and bypass surgery. Appellees do not assert that Gulph Mills had knowledge of such history.

3.  Atcovitz did not respond to any of the AED shocks administered by the emergency medical technicians, but did subsequently respond to a transcutaneous pacemaker. From this, Gulph Mills remarks that Atcovitz was suffering from "atrial fibrillation," as opposed to "ventricular fibrillation." Thus, Gulph Mills implies that, even if Atcovitz would have received electrical defibrillation immediately after he collapsed, it would not have had any beneficial effect. Appellant's Br. at 6; see also R. 30a, 147a–149a. This Court, however, must view the record in the light most favorable to the nonmoving party in reviewing a grant of summary judgment. Thus, we must operate under the assumption that earlier use of an AED would have mitigated Atcovitz's injuries.

Appellees, Jerry Atcovitz and his wife, Roslyn, sued Gulph Mills for negligence in the Court of Common Pleas of Philadelphia County.[4] Specifically, they claimed that, "had [Gulph Mills] possessed an AED device and used it on [Atcovitz] promptly, his injuries would have been significantly less and, therefore, that [Gulph Mills] is liable to him for damages." Trial Ct. Op. at 2. In its defense, Gulph Mills asserted that, at the time of Atcovitz's injury, its employees would not have been permitted by law to use an AED.

In an attempt to preclude Gulph Mills from asserting its defense, Appellees moved for partial summary judgment, which the trial court denied. Immediately prior to trial, however, Appellees orally moved for reconsideration of their motion. At the same time, Gulph Mills cross-moved for summary judgment.[5] The trial court granted Gulph Mills's cross-motion for summary judgment and dismissed the case. The court based its grant of summary judgment on the Emergency Medical Services Act,[6] hereinafter the "EMS Act," and the regulations issued pursuant thereto. The court concluded that, at the time of Atcovitz's injury, Gulph Mills's employees were legally prohibited from using an AED. Thus, the court held that Gulph Mills "cannot be held negligent for failure to use the device." Trial Ct. Op. at 4.

Appellees filed a timely appeal to the Superior Court, which reversed the trial court's order granting summary judgment. *See Atcovitz v. Gulph Mills Tennis Club, Inc.*, 766 A.2d 1280,

4. Atcovitz also sued Lafayette Ambulance Rescue Squad, but the parties eventually agreed to dismissal of the rescue squad with prejudice. R. 111a–112a.

5. The Superior Court, citing Pennsylvania Rule of Civil Procedure 1035.2, reproved the trial court for considering a motion for summary judgment on the day of trial. *Atcovitz v. Gulph Mills Tennis Club, Inc.*, 766 A.2d 1280, 1281 n. 2 (Pa.Super.2001). The court's admonition, however, seemed to overlook that the parties had agreed to reconsideration of Appellees' motion and consideration of Gulph Mills's cross-motion. R. 8a–14a. Indeed, the motions presented a pure question of law that would avoid the time and expense of trial if Gulph Mills prevailed, which, ultimately, it did.

6. Act of July 3, 1985, P.L. 164, No. 45, § 1, *as amended*, 35 P.S. §§ 6921–6938.

1281 n. 2 (Pa.Super.2001). The court opined that the trial court's reliance on the EMS Act was inappropriate because it was designed for and aimed at the administration of emergency services by trained and licensed professionals. As the EMS Act did not contain any provision addressing emergency actions by untrained lay persons, *i.e.*, Gulph Mills's employees, the court concluded that the trial court's grant of summary judgment could not be supported by reference to the EMS Act or its implementing regulations.

■ The court also addressed the effect of 42 Pa.C.S. § 8331.2, hereinafter the "AED Good Samaritan Act," which provides "Good Samaritan civil immunity" for use of an AED in certain instances. It specifically provides immunity for untrained individuals who, in good faith, use an AED in an emergency as an ordinary, reasonably prudent individual would do under the same or similar circumstances. *Id.* at § 8331.2(e). Although the AED Good Samaritan Act was enacted after Atcovitz's injuries, the court found that its passage evinced the Legislature's desire that use of AEDs not be restricted solely to trained professionals. Accordingly, the court held that the trial court erred as a matter of law in granting Gulph Mills's motion for summary judgment. *See Atcovitz*, 766 A.2d at 1282. Subsequently, Gulph Mills petitioned this Court for allowance of appeal, which we granted. *See Atcovitz v. Gulph Mills Tennis Club, Inc.*, 566 Pa. 656, 782 A.2d 541 (2001) (table).

■ This Court's scope of review of an order granting summary judgment is plenary. *Basile v. H & R Block, Inc.*, 563 Pa. 359, 761 A.2d 1115, 1118 (2000). Our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or clearly abused its discretion. *Id.* Summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Pa.R.Civ.P. 1035.2; *see also Murphy v. Duquesne Univ. of the Holy Ghost*, 565 Pa. 571, 777 A.2d 418, 429 (2001).

The reviewing court must view the record in the light most favorable to the nonmoving party, resolving all doubts as to the existence of a genuine issue of material fact against the moving party. *Basile*, 761 A.2d at 1118. When the facts are so clear that reasonable minds cannot differ, a trial court may properly enter summary judgment. *Id.* (citing *Cochran v. GAF Corp.*, 542 Pa. 210, 666 A.2d 245, 248 (1995)).

■ The elements necessary to plead an action in negligence are: (1) the existence of a duty or obligation recognized by law, requiring the actor to conform to a certain standard of conduct; (2) a failure on the part of the defendant to conform to that duty, or a breach thereof; (3) a causal connection between the defendant's breach and the resulting injury; and (4) actual loss or damage suffered by the complainant. *Orner v. Mallick*, 515 Pa. 132, 527 A.2d 521, 523 (1987) (citing *Morena v. South Hills Health Sys.*, 501 Pa. 634, 462 A.2d 680, 684 n. 5 (1983)); *see also* W. Page Keeton *et al.*, Prosser and Keeton on the Law of Torts § 30 at 164 (5th ed.1984). Here, we must focus our analysis on the threshold element of duty.[7] Only therein may we resolve the fundamental question of whether the plaintiff's interests are entitled to legal protection against the defendant's conduct.

■ "A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." Law of Torts, *supra*, § 53 at 356. This Court has embraced

7. Appellees argue that the issue of duty was not considered by the lower courts and, therefore, may not be addressed by this Court. Appellees' Br. at 4–5 (citing Pa.R.A.P. 302). Instead, Appellees assert that "[t]he sole question under review is whether the law of this Commonwealth, at the time of Mr. Atcovitz's cardiac arrest in January of 1996, made it *illegal* for Gulph Mills to have and use an [AED]." *Id.* at 4 (emphasis in original). Appellees' characterization of the issue is too narrowly focused. Gulph Mills's illegality defense is a subsidiary argument of the broader issue of duty, *i.e.*, whether there was no duty *because* carrying an AED would have been illegal. Thus, the issue properly before this Court's plenary review remains whether Gulph Mills owed a duty of care to Atcovitz to acquire and maintain an AED on its premises for emergency use.

an oft-quoted passage articulating the considerations that underlie the concept of common law duty:

> These are shifting sands, and no fit foundation. There is a duty if the court says there is a duty; the law, like the Constitution, is what we make it. Duty is only a word with which we state our conclusion that there is or is not to be liability; it necessarily begs the essential question. When we find a duty, breach and damage, everything has been said. The word serves a useful purpose in directing attention to the obligation to be imposed upon the defendant, rather than the causal sequence of events; beyond that it serves none. In the decision whether or not there is a duty, many factors interplay: The hand of history, our ideas of morals and justice, the convenience of administration of the rule, and our social ideas as to where the loss should fall. In the end the court will decide whether there is a duty on the basis of the mores of the community, "always keeping in mind the fact that we endeavor to make a rule in each case that will be practical and in keeping with the general understanding of mankind."

D. Prosser, *Palsgraf Revisited*, 52 Mich.L.Rev. 1, 15 (1953) (quoting *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 162 N.E. 99, 104 (N.Y.1928) (Andrews, J., dissenting)); *Althaus ex rel. Althaus v. Cohen*, 562 Pa. 547, 756 A.2d 1166, 1169 (2000); *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672, 681 (1979). Thus, the legal concept of duty is necessarily rooted in often amorphous public policy considerations, which may include our perception of history, morals, justice, and society. *Althaus*, 756 A.2d at 1169 (citing *Gardner v. Consolidated Rail Corp.*, 524 Pa. 445, 573 A.2d 1016, 1020 (1990)).

In *Althaus*, this Court enunciated several discrete factors, derived from the aforementioned principles, that our courts are to balance in determining whether a common law duty of care exists: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution. *Althaus*, 756

A.2d at 1169. Within this construct, we must resolve whether Gulph Mills owed a duty to Atcovitz to acquire and maintain an AED.

■ Here, our analysis turns upon the fifth *Althaus* factor, *i.e.,* the overall public interest in the proposed solution. The Legislature's enactments and the ensuing regulations reveal that acquisition, maintenance, and use of an AED, along with AED training requirements, are highly regulated. Where our lawmakers have so thoroughly considered the statewide application and implications of a subject, this Court must refrain from imposing additional requirements upon that legislation.

Looking first to the EMS Act, the Legislature aspired to assure readily available and coordinated emergency medical services of the highest quality to the people of Pennsylvania. 35 P.S. § 6922(a). To accomplish this purpose, the Secretary of Health is required to plan, guide, assist and coordinate the development of areawide emergency medical services systems into a unified Statewide system and to coordinate the system with similar systems in neighboring states. 35 P.S. § 6925(a). For that reason, the Department of Health has adopted comprehensive regulations implementing the provisions of the EMS Act, including regulations establishing the qualifications, duties, and certification procedures for those involved in providing emergency medical services. *See* 28 Pa.Code §§ 1001.1–1015.2. Similar to the EMS Act, the stated purpose of the regulations "is to plan, guide, assist and coordinate the development of regional EMS systems into a unified Statewide system and to coordinate the system with similar systems in neighboring states, and to otherwise implement the Department's responsibilities under the act consistent with the Department's rulemaking authority." *Id.* at § 1001.1.

■ To achieve these goals, the EMS Act and its implementing regulations explicitly classify and identify the capacities, training requirements, and qualifications of individuals who are authorized to deliver emergency medical services. *See, e.g.,* 35 P.S. § 6931 (delineating emergency medical services personnel). Although the Superior Court's observation

that the EMS Act and its regulations do not specifically refer to the use of AEDs by untrained individuals is correct, we do not agree with the court's conclusion that the EMS Act and its regulations are irrelevant to the issue of whether Gulph Mills had a duty to use an AED on its premises. Rather, they are relevant to demonstrate that the acquisition, maintenance, and use of an AED, along with AED training requirements, are highly regulated. Indeed, the implication of the Legislature's exclusion of untrained laypersons from the EMS Act and its regulations is to preclude unqualified and untrained individuals from administering emergency medical services using an AED. We must infer that, under the doctrine of *expressio unius est exclusio alterius*, the inclusion of a specific matter in a statute implies the exclusion of other matters. *Pane v. Commonwealth, Dep't of Highways*, 422 Pa. 489, 222 A.2d 913, 915 (1966) (citing *Cali v. City of Philadelphia*, 406 Pa. 290, 177 A.2d 824, 832 (1962)). It would be absurd for the governmental system charged with rendering effective emergency medical care to hinder the delivery of that care using AEDs through the system, while ordinary citizens would be duty-bound to acquire, maintain, and use AEDs free from any regulation by the Department of Health.

Likewise, the Superior Court also misconstrued the AED Good Samaritan Act as evincing the Legislature's intention that the EMS Act should not restrict the use of AEDs to trained professionals. The AED Good Samaritan Act, which was adopted two years after Atcovitz sustained his injuries, provides civil immunity for *trained* users of AEDs and requires that "expected users shall complete training in the use of an AED . . . ." 42 Pa.C.S. §§ 8331.2(a), (c). As an *exception* to that general rule, the AED Good Samaritan Act also provides civil immunity to untrained individuals who, *in good faith*, use an AED in an emergency as an ordinary, reasonably prudent individual would do under the same or similar circumstances. *Id.* at § 8331.2(e). Significantly, the AED Good Samaritan Act defines "good faith" as including "a reasonable opinion that *the immediacy of the situation is such that the use of an AED should not be postponed until emergency*

*medical services personnel arrive* or the person is hospitalized." *Id.* at § 8331.2(f).

Thus, the AED Good Samaritan Act merely creates an exception for imposing liability on an untrained individual who uses an AED in limited emergency situations; it does not *authorize* its use by any such individual. Indeed, the exception expresses that personnel under the EMS Act are the preferred users of AEDs: it applies only to instances where emergency medical services personnel are unavailable. In addition, it does not indicate that the Legislature aimed to dispense with the regulations governing the training and use of AEDs. Simply, the existence of a civil immunity provision for Good Samaritans who use an AED in an emergency situation cannot impose a duty on a business establishment to acquire, maintain, and use such a device on its premises.[8]

Neither the EMS Act nor the AED Good Samaritan Act imposed a duty upon Gulph Mills to acquire, maintain, and use an AED. Appellees do not cite any other case, statute, or regulation that would have imposed such a duty on Gulph Mills at the time of Atcovitz's injuries in January 1996. Because Gulph Mills did not owe a duty to carry an AED, Appellees could not have established a *prima facie* claim of negligence. *See Orner,* 515 Pa. 132, 527 A.2d 521. Thus, there was no genuine issue of material fact and Gulph Mills was entitled to judgment as a matter of law. *See Basile,* 563 Pa. 359, 761 A.2d 1115. We reverse the order of the Superior Court and affirm the trial court's grant of summary judgment in favor of Gulph Mills.

Mr. Justice CAPPY files a concurring opinion.

Mr. Justice NIGRO files a dissenting opinion in which Mr. Justice SAYLOR joins.

Justice CAPPY, concurring.

I join the majority opinion to the extent that it holds that we must balance the factors in *Althaus ex rel. Althaus v.*

---

**8.** Even if the AED Good Samaritan Act imposed a duty upon Gulph Mills to carry an AED, it would not control this case. The Legislature did not adopt it until two years after Atcovitz sustained his injuries

*Cohen,* 562 Pa. 547, 756 A.2d 1166 (2000). After evaluating all five factors, I agree that no duty exists here.

Justice NIGRO, dissenting.

While I do not necessarily disagree with the majority's conclusion that a tennis club does not owe a duty to its members to acquire and maintain an automated external defibrillator ("AED") on its premises for emergency use, that issue is not before us here. The only issue that the Superior Court considered below was whether the Emergency Medical Services Act, 35 Pa.C.S. §§ 6921–6938, and the Department of Health regulations promulgated pursuant to that Act specifically prohibited Appellants from using an AED. Concluding that they did not, the Superior Court reversed the trial court's entry of summary judgment in favor of Appellants on the basis of those authorities. *Atcovitz v. Gulph Mills Tennis Club, Inc.,* 766 A.2d 1280, 1282 (Pa.Super.2001) ("[A]lthough we make no finding on the ultimate merits of [plaintiffs'] claim, we find that the trial court erred as a matter of law in granting [defendant's] motion for summary judgment on the basis of the statutes and regulations cited.") As I agree with the Superior Court's conclusion in that regard, I would affirm the Superior Court's order and remand the case to the trial court to consider in the first instance whether there is any basis on which to conclude that Appellants owed a duty to Appellees.

Mr. Justice SAYLOR joins the dissenting opinion.