Goldin v. Bally Total Fitness Corp.

*Samantha J. Evian, George M. Vinci Jr.,* and *Joseph J. Hamill Jr.,* for plaintiff.

*Jerome E. Marks, Elizabeth A. Chalik* and *Francis M. Flatch,* for defendant.

ABRAMSON, *J.,* March 8, 2011—This opinion is submitted relative to the appeal of plaintiff Clive Goldin, as executor of the Estate of Peter M. Goldin, from this court's order dated October 27, 2008, which granted the motion for judgment on the pleadings of defendants Bally Total Fitness Corporation d/b/a Bally Total Fitness, Bally Sports Club d/b/a/ Bally Total Fitness Corporation and Bally Total Fitness of Philadelphia, Inc. d/b/a Bally Total Fitness (collectively "Bally's" or "defendants"), and from this court's order dated December 6, 2010, which granted defendants' motion for summary judgment. For the reasons discussed below, this court respectfully submits that its decision should be affirmed.

## BACKGROUND

Plaintiff Clive Goldin, as executor for the estate of Peter Goldin (hereinafter "plaintiff"), filed an amended complaint on June 10, 2008. The plaintiff alleged that on October 25, 2006, Peter Goldin collapsed and died after suffering sudden cardiac attack ("SCA") while exercising at Bally's Total Fitness in King of Prussia.[1] Plaintiff alleged that the defendants' negligence was a substantial factor in the cause of Peter M. Goldin's death. More specifically and most relevantly for present purposes, plaintiff alleged that defendants' conscious and deliberate decision not to place an "automated external defibrillator" ("AED") in its King of Prussia location constituted negligence.[2] Plaintiff also alleged several other instances of defendants' negligence with regard to Peter Goldin's death.[3] In total, plaintiff brought three counts in his amended complaint: negligence (Count I), wrongful death (Count II), and a survival action (Count III).

On September 12, 2008, defendants filed a motion for judgment on the pleadings requesting that any and all claims against defendants be dismissed with prejudice on the grounds that controlling Pennsylvania case law established that a health club had no duty to maintain an AED device on its premises. In his opposition, plaintiff put forward two primary arguments. First, he argued that while Bally's failure to maintain an AED device

---

1. See amended complaint, at ¶¶11-16.
2. *Id.* at ¶¶ 28-31.
3. See *Id.* at ¶47. Other examples of defendants' negligence alleged by plaintiff include (1) failing to properly evaluate decedent's physical condition, (2) failing to have a supply of oxygen in the club, (3) failing to call 911 promptly, (4) failing to have trained employees to attend a patron with a serious health problem, etc.

on premises was clearly the main thrust of plaintiff's case, the amended complaint raised additional claims of negligence that could not be disposed of even if the court accepted defendants' position. Second, plaintiff argued that defendants' reliance on case law was inapposite and thus should be rejected. Acknowledging the validity of plaintiff's first argument, defendants submitted an amended order limiting its dismissal request to any and all of plaintiff's claims against defendants for failure to have, acquire or maintain an AED device on the premises of defendants' club. After due consideration, the court granted defendants' amended motion for judgment on the pleadings on October 27, 2008. On September 16, 2010 plaintiff filed a praecipe to withdraw his remaining non-AED claims. Defendants responded by filing a motion for summary judgment on the remaining counts on November 1, 2010. Plaintiff failed to oppose this motion. Consequently, the court granted defendants' motion for summary judgment on December 6, 2010. The present appeal followed.

## DISCUSSION

Plaintiff's first amended complaint stated in relevant part that "the Bally defendants...had a duty to Peter M. Goldin to exercise reasonable care to ensure that the Health Club was equipped with the necessary and proper safety equipment to ensure the safety of their patrons, *specifically having AED devices in their Health Club*, so as to prevent the untimely death of their patrons due to, inter alia, cardiac arrest, ventricular arrhythmia and ventricular fibrillation."[4] (emphasis added) Thus, the existence of a

---

4. *Id.* at ¶45.

duty to maintain an AED device on the premises of its club is the crux of defendants' motion for judgment on the pleadings and plaintiff's appeal.

### 1. *The Existence of a Duty and the Relative Precedent*

In the negligence context, a duty is defined as an obligation to which the law will give recognition and effect, to conform to a particular standard of conduct toward another.[5] Whether a duty exists in a given circumstance is a question of law. In the current instance, the Supreme Court of Pennsylvania addressed this question in *Atcovitz v. Gulph Mills Tennis Club.*[6] In *Atcovitz*, a patron suffered a heart attack while playing tennis at a sports club. The patron survived, but suffered permanent injuries to his nervous system.[7] In his subsequent lawsuit, the patron alleged that the club was negligent in failing to maintain an AED on the premises.[8] Thus, identically to the current case, *Atcovitz* turned on the specific question of whether a club owed a duty to its patrons to maintain an AED. After winding its way through the lower courts, the case ultimately reached the Supreme Court of Pennsylvania which determined that clubs owed patrons no duty to maintain an AED.

### 2. *Atcovitz's Analysis*

In *Atcovitz*, the Supreme Court started its duty analysis with the proposition that where Pennsylvania lawmakers have thoroughly considered the statewide application and

---

5. *Atcovitz v. Gulph Mills Tennis Club, Inc.*, 571 Pa. 580, 586, 812 A.2d 1218, 1222 (Pa. 2002), citing W. Page Keeton et. al., Prosser and Keeton on the Law of Torts §53 at 356.

6. *Id.*

7. *Id.* at 583.

8. *Id.*

implications of a subject, the courts must refrain from imposing additional requirements upon that legislation.[9] Here, the Supreme Court identified two pieces of relevant legislation: (1) the Emergency Medical Services Act, Pa. Stat. Ann. Tit. 35, §§6921-6938 ("EMS Act") and (2) 42 Pa. Cons. Stat. §8331.2AED of the Good Samaritan Act ("AED Good Samaritan Act").

As explained by the Supreme Court in *Atcovitz*, the EMS Act is a comprehensive piece of legislation the stated intent of which is "to assure readily available and coordinated emergency medical services of the highest quality to the people of Pennsylvania."[10] To achieve this goal, the EMS Act and its implementing regulations explicitly classify and identify the capacities, training requirements, and qualifications of individuals who are authorized to deliver emergency medical services, including the use of AEDs.[11] Examining the EMS Act in detail, the Supreme Court concluded that it manifested the Legislature's intent "to preclude unqualified and untrained individuals from administering emergency medical services using an AED."[12] Notably, the court reached this decision despite its acknowledgement that "the EMS Act and its regulations do not specifically refer to the use of AEDs by untrained individuals."[13] Instead, the court arrived at this conclusion by inference, reasoning that "it would be absurd for the governmental system charged with rendering effective emergency medical care to hinder the delivery of that care using AEDs through the system,

---

9. *Id.* at 588.
10. *Id.*
11. *Id.*
12. *Id.* at 589.
13. *Id.* at 588-589.

while ordinary citizens would be duty-bound to acquire, maintain, and use AEDs free from any regulation by the department of health."[14]

Having determined that the EMS Act imposed no duty on health clubs to maintain AED devices, the *Atcovitz* court turned its attention to the AED Good Samaritan Act. Specifically, the court examined the legislation in light of the Superior Court's conclusion that the AED Good Samaritan Act "evinced the Legislature's intention that the EMS Act should not restrict the use of AEDs to trained professionals."[15] The Supreme Court rejected this position. Parsing the language of the statute, the Supreme Court determined that the AED Good Samaritan Act "merely creates an exception for imposing liability on an untrained individual who uses an AED in limited emergency situations; it does not authorize its use by any such individual."[16] (emphasis in original) For the Supreme Court this was a distinction with a difference, and thus it concluded that "the existence of a civil immunity provision for Good Samaritans who use an AED in an emergency situation cannot impose a duty on a business establishment to acquire, maintain, and use such a device on its premises."[17]

### 3. *This Court's Application of Atcovitz*

In granting defendants' motion for judgment on the pleadings, this court was bound by the Supreme Court's holding in *Atcovitz* that a sports club has no duty to acquire, maintain and use an AED. Recognizing its detrimental

---

14. *Id.* at 589.
15. *Id.* at 585.
16. *Id.* at 590.
17. *Id.*

impact to his claim, the plaintiff in his opposition to defendants' motion for judgment on the pleadings attempted to avoid the application of this precedent. The plaintiff employed two primary arguments to achieve this aim. First, the plaintiff attempted to distinguish his case from *Atcovitz* factually. Specifically, plaintiff argued that "the events underlying *Atcovitz* arose more than ten years prior to the death of Peter M. Goldin"[18] and "unlike *Atcovitz* this case does not involve a tennis club...(but) a national health and fitness club chain which has already placed AED devices in many of their locations around the country."[19] After due consideration, this court found these distinctions extant but immaterial. Concerning the time span separating the two underlying events, in the absence of relevant developments in the law, the mere passage of years does not justify this court ignoring binding Supreme Court precedent. The plaintiff pointed to no development in Pennsylvania law that would warrant this court taking such an action.

This court found similarly unavailing plaintiff's "national versus local" distinction. The thrust of plaintiff's argument in this regard was that since Bally's maintained AEDs at locations outside Pennsylvania, the "inescapable conclusion" is that the deceased was "entitled to the same level of safety afforded Bally's members in other states."[20] The court found this claim unconvincing. First, plaintiff cited no authority for its proposition. Second, the logic underpinning plaintiff's argument crumbles upon closer inspection. For example, if plaintiff's argument was

---

18. Plaintiff's memorandum of law in opposition to defendants' m - tion for judgment on the pleadings, §IV, ¶B.
19. *Id.*
20. *Id.*

accepted, any national chain would be required to make every one of its locations meet the most rigorous safety practices (if such could even be determined[21]) required by any state in which it operates. This is not the law. Pennsylvania clubs are governed by Pennsylvania law, and the relevant Pennsylvania law in this instance is set down in *Atcovitz.*

The second line of argument the plaintiff employed to circumvent the application of *Atcovitz* is what might be termed his "evolutionary" argument. Plaintiff correctly noted in his opposition to defendants' motion that the question of whether a legal duty exists is not one settled once and forever. Instead, the Pennsylvania Supreme Court has embraced the position that the legal concept of duty rests on "shifting sands" and "is necessarily rooted in often amorphous public policy considerations, which may include (the Supreme Court's) perception of history, morals, justice and society."[22] Seizing upon this language, plaintiff essentially argued that the time has come for Pennsylvania to set aside *Atcovitz* and require AED's in health clubs.[23] This court declined plaintiff's request to overturn a Supreme Court decision as beyond its mandate. Moreover, even on the merits, this court found plaintiff's contention that *Atcovitz* is outdated unconvincing for

21. Despite plaintiff's arguments to the contrary, it is not clear to this court that what constitute the "best safety practices" can be readily identified. For example, in *Atcovitz*, the Supreme Court interpreted the Legislature's intent in passing the EMS Act as, in part, a desire to limit use of AEDs to trained professionals. See supra, note 11. The implication is that the Pennsylvania legislature believed requiring laymen to maintain and use AEDs posed a not unsubstantial risk.

22. *Atcovitz*, 571 Pa. at 587, quoting D. Prosser, Palsgraf Revisited, 52 Mich. L. Rev. 1, 15 (1953).

23. See plaintiff's memorandum of law, §IV, ¶B ("...duty is a dynamic principle which can change in the face of public policy...").

multiple reasons. First, at time of disposition, *Atcovitz* was only six years old, and plaintiff identified no inexorable legislative or judicial tide indicating Pennsylvania's practice obsolete.[24] Second, this court found that much of plaintiff's argument inapposite given the stated basis of the Supreme Court's decision in *Atcovitz*. Specifically, while the *Atcovitz* court noted that it was required to balance several discrete factors to determine whether a common law duty of care exists (the five so-called "*Althaus* factors"),[25] it stated explicitly that its analysis turned upon one factor in particular, i.e. the overall public interest in the proposed solution (duty).[26] This court found plaintiff's response lacking a similar focus, with his treatment of this paramount factor being limited to bare assertions such as "striving to achieve a safer exercise and fitness environment is an important societal goal" and "(health club owners) are in the best position to provide reasonable safety equipment in their facilities."[27] Such general assertions are insufficient to overturn *Atcovitz* especially in light of that decision's detailed reasoning.[28]

---

24. Preliminary research by this court found that as of 2010, eight states and the District of Columbia require health clubs to have at least one AED on the premises. As of that date, more than 40 states had no such legal requirement. See NCSL.org, State Laws on Cardiac Arrest and Defibrillators, http://www.ncsl.org/issuesResearch/Health/LawsonCardiacArrestandDefibrillatorsAEDs/tabid/14506/Default.aspx (last visited November 2010).

25. *Atcovitz*, 571 Pa. at 587. As set out in *Atcovitz*, the five *Althaus* factors that the courts are to balance in determining whether to impose a duty are (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution.

26. *Id.*

27. See plaintiff's memorandum of law, §IV, ¶B.

28. This court takes no position on plaintiff's analysis of the other four *Althaus* factors.

## CONCLUSION

For the reasons discussed above, the court respectfully submits that its decision be affirmed.