J-S70034-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| NARO ENTERPRISES, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GREAT AMERICAN INSURANCE | : | No. 875 MDA 2017 |
| GROUP & CHRISTOPHER SLEZAK | : | |

Appeal from the Order Entered June 30, 2015
In the Court of Common Pleas of Luzerne County
Civil Division at No(s): 2009-10981

BEFORE: GANTMAN, P.J., SHOGAN, J., and OTT, J.

MEMORANDUM BY OTT, J.: **FILED FEBRUARY 20, 2018**

Naro Enterprises, Inc. (Naro) appeals from the order entered on June 30, 2015 in the Court of Common Pleas of Luzerne County denying summary judgment in favor of Naro and granting summary judgment in favor of Great American Insurance Group (Great American).[1] In this appeal, Naro claims the trial court erred in determining that because Naro's stolen trailer was not in "transit" at the time of the theft, it was not covered under Great American's insurance policy. After a thorough review of the submission by the parties, relevant law, and the certified record, we affirm.

---

[1] This matter was appealed prematurely in 2015, as the grant of summary judgment did not address any of the claims against Slezak. That appeal was discontinued. On May 19, 2017, Naro discontinued all claims, with prejudice, against Slezak. This action made the June 30, 2015 order appealable. The instant appeal was timely commenced on June 2, 2017.

The underlying facts of this matter are not in dispute. Naro is a trucking company that was insured by a policy issued by Great American. At issue is the interpretation of the definitions of "transit" and "transit ends" as found in the insurance policy. We will discuss these definitions after we relate the factual history of the occurrence at issue.

On May 8, 2008, beginning at approximately 8:00 a.m., a driver for Naro picked up a trailer loaded with steel rods from Sandvick Materials. These steel rods were to be delivered to a location in Houston, Texas. Prior to setting out for Texas, the driver returned to the Naro location at approximately noon on May 8, 2008, to allow for a pre-trip inspection. Some damage to the trailer was discovered and an independent welder was brought to the Naro site to make the needed repair. This repair was done on May 10, 2008. The laden trailer remained at the Naro site in anticipation of continuing the delivery trip on Monday, May 12, 2008. The trailer was last seen at Naro on Sunday, May 11, 2008, sometime after noon. There is no dispute that at least 75 hours passed from the time the trailer arrived at Naro until it was last seen at Naro. At approximately 1:00 a.m., Monday, May 12, 2008, at least 85 hours after arrival at Naro, the trailer and the steel rods were discovered to have been stolen.

On May 13, 2008, Naro submitted a claim to Great American seeking in excess of $210,000.00 for the goods. Ultimately, Great American denied the claim, asserting coverage was only provided for such goods while in transit. Great American further asserted that transit ended after 72 hours passed with

the trailer at the Naro site. The denial of the claim led to this litigation and the appeal currently before us.

As noted above, there is no dispute that the trailer in question, laden with the steel rods destined for Houston, remained at the Naro location for more than 72 hours. There is no dispute that transit of the steel rods had begun when the trailer left Sandvick. What is at dispute is, if and when that transit ended.

We quote the relevant definitions found in the Great American insurance policy.

> Covered Property means property of others that you have accepted for transportation as a motor carrier under your tariff and bill of lading or other written contract.
>
> We cover property only while it is:
>
> > a. contained in or on a land vehicle while in "transit" and/or during "loading" and "unloading"[2]

**See** Plaintiff's Motion for Summary Judgment, Exhibit B, Policy, Motor Truck Cargo Coverage Form, at 1.

> "Transit" begins with the actual movement of the goods from point of shipment bound for a specific destination. It remains in transit during the ordinary, reasonable and necessary stops, interruptions, delays or transfers incidental to the route and method of shipment.
>
> "Transit" ends when any of the following occurs:

---

[2] Words in quotation marks are separately defined in the policy.

1. Covered Property is accepted by, or on behalf of, the consignee at the intended destination or at any intermediate point short of the original intended destination; or

2. seventy-two hours after arrival at destination; or

3. any other stop that exceeds seventy-two hours.

*Id*. at 5-6.

We note that when viewing the policy, the two "Transit" definitions are separate entries; they are not part of the same entry.

Our analysis is guided by the following principles of law.

> Th[e] scope of review of an order granting summary judgment is plenary. Our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or clearly abused its discretion. Summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party, resolving all doubts as to the existence of a genuine issue of material fact against the moving party. When the facts are so clear that reasonable minds cannot differ, a trial court may properly enter summary judgment.

*Valentino v. Phila. Triathlon, LLC*, 150 A.3d 483, 490 (Pa. Super. 2016) (citing *Atcovitz v. Gulph Mills Tennis Club, Inc.*, 571 Pa. 580, 812 A.2d 1218, 1221-22 (2002)).
Moreover,

> the non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

*Ertel v. Patriot-News Company*, 544 Pa. 93, 674 A.2d 1038, 1042 (1996).

When reviewing an insurance contract on appeal, we note that our Court's scope of review is plenary. ***Cresswell v. Pennsylvania National Mutual Casualty Ins. Co.***, 820 A.2d 172 (Pa. Super. 2003).

Moreover,

> [i]n interpreting the terms of an insurance contract, the appellate court examines the contract in its entirety, giving all of the provisions their proper effect. The court's goal is to determine the intent of the parties as exhibited by the contract provisions. In furtherance of its goal, the court must accord the contract provisions their accepted meanings, and it cannot distort the plain meaning of the language to find an ambiguity. Moreover, it will not find a particular provision ambiguous simply because the parties disagree on the proper construction; if possible, it will read the provision to avoid an ambiguity.

*Burton v. Republic Ins. Co.*, 845 A.2d 889, 893 (Pa. Super. 2004).

***Brown v. Everett Cash Mutual Insurance Company***, 157 A.3d 958, 962 (Pa. Super. 2017).

The underlying issue is straightforward, was the trailer and the cargo in transit at the time of loss, or had the transit ended. Naro argues that the trailer and cargo were in transit pursuant to the definition of "Transit" found in the policy. Specifically, Naro claims the repair of the trailer was a necessary interruption or delay, and therefore, the trailer and cargo were still in transit when the cargo was stolen, and thus Great American is required to indemnify the loss. Further, Naro claims that the 72-hour limit imposed in the definition of "Transit ends" does not apply. Naro posits that condition number 3, which

states that transit ends when "any other stop exceeds 72 hours", applies to stops "other" than those stops that are "ordinary, reasonable and necessary" pursuant to the definition of "Transit" found in the preceding policy definition.

Countering Naro's argument, both Great American and the trial court assert the 72-hour limit set in the definition of "Transit ends" is clear and unambiguous. Because the trailer and cargo had been at rest for more than 72 hours, it was no longer in transit and, therefore, no longer covered by the insurance policy. Both Great American and the trial court cite *Inter City Express v. Canal Indemnity Company*, 709 So.2d 1021 (La. App. 4th Cir. 1998) to support that interpretation. The Canal Indemnity policy, as related in that decision, has similar, but not identical, language regarding a 72-hour delay.[3]

However, the 72-hour provision was not directly at issue in *Inter City Express*. There, the trial court found no coverage because the trailer at issue was not attached to a tractor at the time of loss. Accordingly, the lost cargo in *Inter City* was not, by definition, "covered cargo." Nonetheless, the

_____

[3] As related in *Inter City Express*, the 72-hour clause in the Canal Indemnity policy stated:

> "[c]argo on a vehicle at a terminal, garage or depot for more than seventy-two hours (excluding Sundays and holidays) from the time the vehicle arrives at the terminal, garage or depot" is not covered.

*Id.* at 1023.

- 6 -

Louisiana Appellate Court found nothing ambiguous about the 72-hour exclusion. Rather, it stated,

> A reading of the various provisions simply means that cargo is insured if it is on a scheduled vehicle or a trailer attached to a scheduled vehicle or at a location scheduled on the declarations page. And, coverage, if it existed, will cease if the cargo is left at the terminal, garage or depot for more than seventy-two hours. It would make no sense for us to reform the policy to say that cargo left at the terminal or garage less than seventy-two hours is covered, regardless of the policy definition of "covered cargo."

*Id*. at 1023.

We agree with this reasoning, as far as it is applicable to the instant policy. However, neither the argument of Great American nor the rationale of the trial court, nor the discussion in the *Inter City Express* decision, expressly addresses Naro's argument and the instant policy's use of the word "other" in regards to "any other stop that exceeds seventy-two hours."

Our reading of the policy convinces us that the definition of "Transit ends" includes three types of stop. First, when the cargo is accepted by the consignee. Second, when 72 hours expires after the arrival of the cargo at the destination. *See* Definition of "Transit ends", 1 and 2. The third definition of transit ending is when any "other" stop takes places that exceeds 72 hours. Accordingly, "other" as used in the definition of "Transit ends" refers to the immediately preceding conditions 1 and 2, and not, as Naro contends, to the ordinary, reasonably and necessary stop referred to in the definition of "Transit begins."

This interpretation leads to an unambiguous reading of the policy, similar to the result found in **Inter City Express**. Relevant to this matter, cargo is covered as long as it is in transit. Transit includes any ordinary, reasonable and necessary stop, as long as that stop is less than 72 hours long. Once a stop lasts more than 72 hours, transit has ended, and coverage for the cargo ceases.[4]

In light of the foregoing, we find no error of law or abuse of discretion in the trial court's grant of summary judgment in favor of Great American.

Judgment affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/20/2018

_____

[4] The trailer did not pass inspection and was required to be repaired before the journey could continue. Allowable stops under the definition of "Transit" must be ordinary, reasonable and necessary. All three conditions must be met for the cargo to remain in transit. While the stop to perform the repair on the trailer would have been necessary, it is unclear if this repair, requiring the hiring of an outside welder to make the trailer travel-worthy, could be considered "ordinary" under the policy definition.