J-A07016-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SANFORD DAVNE AND LISA DAVNE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DELCHESTER LAND HOLDINGS, LLC, | : | No. 1840 EDA 2021 |
| THADDEUS BARTKOWSKI, CRYSTAL | : | |
| CRAWFORD AND DELCHESTER | : | |
| EQUESTRIAN, LLC | : | |

Appeal from the Order Entered August 3, 2021
In the Court of Common Pleas of Chester County Civil Division at No(s):
2019-02428-CT

BEFORE:  LAZARUS, J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED MAY 12, 2022**

Sanford Davne and Lisa Davne ("Sellers") appeal from the order granting summary judgment in favor of Thaddeus Bartkowski and Delchester Equestrian, LLC ("Buyers").[1] Sellers argue the deposit that Buyers paid pursuant to an agreement for the purchase of property was not refundable. We affirm.

In April 2018, and Sellers and Buyers entered into an agreement of sale ("Agreement") for property located in Newtown Square ("Property"). The settlement was to occur in July 2018.

---

[1] Delchester Land Holdings, LLC and Crystal Crawford were parties to a case that had been consolidated in the trial court with the instant case. As explained below, that separate case has not been appealed. Therefore, Delchester Land Holdings, LLC and Crawford are not parties to this appeal.

The Buyers put a $141,000 deposit into escrow. The Agreement provided in Section 32(b) that the deposit would be non-refundable unless Sellers intentionally failed to complete closing or were unable to transfer good title:

> NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, BUYER AND SELLER EXPRESSLY ACKNOWLEDGE AND AGREE THAT IMMEDIATELY UPON SIGNING OF THIS AGREEMENT THE DEPOSIT MONIES SHALL BE NON-REFUNDABLE TO BUYER FOR ANY REASON OTHER THAN (A) SELLER INTENTIONALLY FAILS TO COMPLETE CLOSING, OR (B) SELLER IS UNABLE TO CONVEY TO BUYER GOOD TITLE TO THE PROPERTY.

Agreement at 13, ¶ 32(B).

The Agreement stated if the Buyers terminated the Agreement due to a right granted thereunder, the Agreement would be void and the Buyers would be entitled to the deposit money:

> Where Buyer terminates this Agreement pursuant to any right granted by this Agreement, Buyer will be entitled to a return of all deposit monies paid on account of Purchase Price pursuant to the terms of Paragraph 26(B), and this Agreement will be VOID. Termination of this Agreement may occur for other reasons giving rise to claims by Buyer and/or Seller for the deposit monies.

*Id.* at 12, ¶ 26(A).

The Agreement further provided that Sellers would deliver possession at settlement:

> Possession is to be delivered by deed, existing keys and physical possession to a vacant Property free of debris, with all structures broom clean, at day and time of settlement.

*Id.* at 2, ¶ 4(G).

An Addendum to the Agreement granted Sellers a right to remain on the property until September: "Seller and Buyer agree that the Seller can remain in the Property from July 15, 2018 to September 1, 2018, cost of rent from Seller to Buyer will be $1.00." Agreement at 14.

The parties did not complete the closing. In March 2019, Sellers filed the instant suit ("Sale Action") against Buyers, claiming they were entitled to retain the $141,000 deposit. In April and May 2021, Sellers and Buyers filed cross-motions for summary judgment. Buyers argued, among other things, that although the Agreement gave Sellers a right to occupy the premises after closing, Sellers did not have an exclusive right to do so. They argued that Sellers refused to close without their exclusive possession of the Property until September 1. Buyers attached to their motion a transcript of the deposition of one of Sellers, Sanford Davne. He had testified that he required exclusive possession because Buyers wanted people working in the house while Sellers still were there, and Sellers found that unacceptable. Mot. for Sum. Judg., filed Apr. 8, 2021, at Ex. B, at 73-74. He said that Buyers had not discussed Sellers' exclusive possession, "other than to say [Buyers] didn't want [Sellers] to have exclusive. That's the only time it came up. I don't believe he ever used the term exclusive use that we could have it." *Id.* at 80. Buyers argued Sellers were tendering a property that was materially different than the property they had promised in the Agreement of Sale.

In a separate suit, Sanford Davne sued Delchester Equestrian LLC, Traddeus Bartkowski, and Crystal Crawford alleging violations of a lease

- 3 -

agreement ("Lease Action"). The trial court consolidated the Lease Action and the Sale Action "for all purposes through trial." Order, dated Feb. 5, 2020. The parties also filed cross-motions for summary judgment in the Lease Action.

In a single order, the trial court granted Buyers' motion for summary judgment in the Sale Action, as well as Sanford Davne's motion for summary judgment in the Lease Action. The order identified the docket number as "2019-02428-CT (Consolidated with 2019-07497-CV)" – *i.e.*, the Sale Action consolidated with the Lease Action – and included in the caption all parties from both cases. Sellers filed a notice of appeal stating they appealed from the order "granting [Buyer's] Motion for Summary Judgment[,] dismissing [Seller's] Complaint[,] and Ordering escrowed funds released to [Buyers] with regard to the action at [the Sale Action]." Notice of Appeal, filed Aug. 21, 2021. The caption used the identical caption as the trial court order, including the trial court's identification of the docket number and naming all parties from both cases. *Id.*

This Court issued a rule to show cause why the case should not be quashed pursuant to **Walker**[2] because Sellers had failed to file a second notice of appeal at the Lease Action. Sellers responded that they were only appealing the decision in the Sale Action. They explained that because Sanford Davne's motion for summary judgment was granted in the Lease Action, they were not aggrieved parties and therefore could not appeal at that docket.

---

[2] **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), **overruled in part by Commonwealth v. Young**, 265 A.3d 462 (Pa. 2021).

Sellers raise the following issues on appeal:

> 1. Did the trial court err as a matter of law and/or abuse its discretion by concluding that ¶ 32(b) of the Agreement of Sale is "not operative" and noncontrolling over the distribution of escrowed funds in the event closing does not occur as scheduled, thereby failing to enforce the clear, unequivocal, and unambiguous language of the agreement?

> 2. Did the trial Court err as a matter of law and/or abuse its discretion by relying upon alleged "concessions" made by [Sellers] that were never made and are not supported by the record, including but not limited to "Sellers concede that the terms they demanded at closing were not the terms promised in the Agreement" and by concluding that [Sellers] "have intentionally failed to close", when the record on summary judgment is to the contrary or, alternatively, the record on summary judgment demonstrates that there are disputed issues of fact that preclude the entry of summary judgment in [Buyers'] favor on this issue?

Sellers' Br. at 4.

We must first address the **Walker** question. **Walker** requires a party to file separate notices of appeal where an order resolves issues on more than one docket. 185 A.3d at 468. It is intended, in part, to prevent parties from consolidating matters for appellate review without court approval. **See id.** (noting where "the Commonwealth filed a single notice of appeal from an order arising on more than one docket, the Commonwealth effectively, and improperly, consolidated the appeals in the Appellees' four cases for argument and joint resolution, without either the approval of the Superior Court or the agreement of the Appellees"). Here, Sellers sought to challenge the order at only one docket, the Sale Action. They do not seek to challenge the order as

to the Lease Action because they were not aggrieved by the decision at that docket. **Walker** does not apply.[3]

We now turn to Sellers' issues, which we address together. Sellers argue that the Agreement controls the return of the deposit, and it provides for the return of the deposit only if Buyers establish Sellers were unwilling to close or did not possess good title at the time of closing. They claim Buyers conceded they were able to obtain title insurance and therefore Sellers had good title. Further, Buyers admit Sellers were at the closing and willing to close. Sellers claim the court looked beyond the four corners of the document to find that because they did not execute a separate and independent post-occupancy use agreement that would control Sellers use after the closing, they constructively refused to close. Sellers claim there is no evidence they intentionally failed to complete the closing.

Sellers maintain that Buyers had an "ever evolving justification for failing to consummate the closing," including alleged damage to a gate on the Property, an inability to reach a meeting of the minds concerning a mortgage agreement, an alleged failure to timely notice tenants of the sale, and an inability to reach an agreement on a post-closing occupancy agreement. Sellers' Br. at 11. They argue these alleged justifications "may have relieved

_____

[3] Further, if **Walker** did apply, quashal might not be necessary. The Pennsylvania Supreme Court recently concluded that this Court, in its discretion, may allow a party to correct the error, that is, the filing of the appeal at only one docket, where appropriate. **Young**, 265 A.3d at 477.

- 6 -

them of the obligation to close; however, they do not entitle [Buyers] to a return of the deposit funds placed in escrow." ***Id.*** (emphasis removed).

Sellers also claim the court imputed duties onto them. They point out that the Agreement's addendum provided Sellers with the right to possession of the property after closing and claim Buyers insisted Sellers sign a post-occupancy agreement limiting their use, which Sellers refused to do. Sellers maintain that nothing in the Agreement required Sellers to enter this post-occupancy agreement.[4]

Sellers further argue that the court ignored the clear intent of sophisticated parties, which was for Paragraph 32 to control the return of the

_____

[4] Sellers claim that the Buyers "refused to consummate the settlement of the Property on July 16, 2018 without a post-occupancy agreement in place," but provide no citation to support this proposition. Sellers' Br. at 7. Our review of the record reveals the following. During Mr. Bartkowski's deposition, he stated, "We had printed documents, some of which the [Sellers] would contend is not what we had agreed to. And I believe the [Sellers] had their own printed documents, which we would contend is not what we agreed to," and the documents would have included an occupancy agreement. Sellers' Mot. For Sum. Judg., filed May 12, 2021, at Ex. C, at 67-68. In the deposition, Mr. Bartkowski was also asked about an email where he told Davne to "Send over the final occupancy agreement today by 5:00 p.m. If it is not consistent with what we agreed on the phone . . . we won't be having a closing." ***Id.*** at 76.

Davne also responded to questions about a use and occupancy agreement at his deposition. Buyers' Mot. for Sum. Judg., filed Apr. 8, 2021, at Ex. B, at 48, 72. He concurred that the agreement he proposed would "convey on the seller exclusive possession of the main house during the holdover period." ***Id.***

Buyers stated Sellers' proposed occupancy agreement was attached to their motion for summary judgment at Exhibit C. However, Exhibit C to the motion for summary judgment is an email, with no occupancy agreement.

deposit. Sellers allege the court acknowledged Paragraph 32 governs the refundability of the deposit, but then improperly found it was not operative. They characterize the court's action as an attempt to rewrite the contract. They further allege that they did not concede that they demanded new terms at closing.

"[S]ummary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Summers v. Certainteed Corp.*, 997 A.2d 1152, 1159 (Pa. 2010) (quoting *Atcovitz v. Gulph Mills Tennis Club, Inc.*, 812 A.2d 1218, 1221 (Pa. 2002)); Pa. R.C.P. 1035.2(1). "When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party." *Summers*, 997 A.2d at 1159 (citing *Toy v. Metropolitan Life Ins. Co.*, 928 A.2d 186, 195 (Pa. 2007)). "[T]he trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party," and "may only grant summary judgment 'where the right to such judgment is clear and free from all doubt.'" *Id.* (quoting *Toy*, 928 A.2d at 195).

We reverse a grant of summary judgment only "if there has been an error of law or an abuse of discretion." *Id.* (quoting *Weaver v. Lancaster Newspapers, Inc.*, 926 A.2d 899, 902 (Pa. 2007)). Whether there is a genuine issue of material fact "presents a question of law, and therefore, on that question our standard of review is *de novo*," and "we need not defer to

the determinations made by the lower tribunals." *Id.* (quoting *Weaver*, 926 A.2d at 902-03). "To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record." *Id.* (quoting *Weaver*, 926 A.2d at 903).

"[T]hree elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) (citation omitted). Contract interpretation is a question of law. *Davis v. Borough of Montrose*, 194 A.3d 597, 608 (Pa.Super. 2018). Our standard of review is *de novo,* and our scope of review is plenary.*Id.*. When interpreting a contract, the goal "is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement." *Id.* (citation omitted).

The trial court concluded that Sellers insisted on exclusive possession of the main house during the holdover period and refused to close when Buyers did not agree to grant them exclusive possession. Trial Court Opinion, filed Aug. 3, 2021, at 4. It pointed out that Sanford Davne testified at his deposition that Buyers did not use "the term exclusive other than to say he didn't want us to have exclusive. That's the only time that that ever came up." *Id.* (citation omitted). The court further noted that Sellers conceded this may have relieved Buyers of the obligation to close but argue it does not entitle Buyers to the return of the deposit. *Id.* (quoting Sellers' Mot. For Sum. Judg., filed

- 9 -

May 12, 2021, at ¶ 23). The court noted Sellers relied on the "[n]otwithstanding anything contained herein to the contrary" language of Paragraph 32 to maintain their tender met the Paragraph's requirements. *Id.* Sellers maintained they only had to appear at closing and tender something to Buyers. *Id.* The court disagreed and found that "the plain language of Paragraph 32(B) overrides only the provisions of the Agreement that govern refundability of the deposit monies and not the substantive obligations of the Sellers." *Id.*

It ultimately found the Sellers' refusal to accept non-exclusive possession was intentional, and because they intentionally failed to close, they are not entitled to the deposit money. It reasoned:

> [T]he Sellers cannot hide behind the use of the term "notwithstanding" to avoid all their obligations at closing and tender the Property on terms that are materially different from what was promised in the Agreement. The Sellers' refusal to accept non-exclusive possession of the Property during the holdover term can only be described as intentional. The Sellers have intentionally failed to close and are not entitled to the deposit monies under Paragraph 32(B).

*Id.*

The court concluded that because Paragraph 32(B) was not controlling, Buyers could receive a refund, which is covered by Paragraph 26:

> Where Buyer terminates this Agreement pursuant to any right granted by this Agreement, Buyer will be entitled to a return of all deposit monies paid on account of Purchase Price pursuant to the terms of Paragraph 26(B), and this Agreement will be VOID.

- 10 -

*Id.* (quoting Agreement at12, ¶ 26(A)). It concluded that "[b]y insisting on excluding Buyers from the main house on the Property after closing, [S]ellers violated the Agreement and gave Buyers the right to terminate the Agreement and recover the deposit monies." *Id.*

The court did not err or abuse its discretion. The Agreement provided Sellers the right to "remain in the Property" until September 1; it did not provide for exclusive possession. When Sellers refused to tender the Property in the condition agreed to in the Agreement, that is, in a condition in which Buyers could possess the Property, they failed to complete the closing and lost the right to retain the deposit. We find Sellers' argument that they were not required to enter a post-occupancy agreement irrelevant. Here, the Agreement provided them the right to "remain" in the property; it did not provide exclusive possession. Sanford Davne himself testified that Sellers required exclusive possession. Buyers did not agree to purchase a property to which Sellers could refuse them entry for more than a month. The trial court properly concluded that Sellers intentionally failed to complete closing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/12/2022

- 11 -