Matthew **SALVATORE**, Appellee,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 30, 2004.

Filed Feb. 16, 2005.

Katherine C. Douglas, Philadelphia, for appellant.

Brian J. Grady, Philadelphia, for appellee.

BEFORE: JOYCE, GANTMAN, and BECK, JJ.

OPINION BY JOYCE, J.:

¶ 1 State Farm Mutual Automobile Insurance Company (hereinafter "State Farm") appeals from the judgment entered in the Philadelphia County Court of Common Pleas on February 25, 2004, in favor of Matthew Salvatore (Appellee). For the reasons set forth below, we reverse and remand this matter to the trial court to enter judgment in favor of State Farm. The relevant facts and procedural history of this matter are as follows.

¶ 2 On February 2, 2000, Appellee purchased a 1993 Mitsubishi Diamante automobile from P & H Auto Sales. On Feb-

ruary 15, 2000, Appellee was stopped by police officers on Intestate 95 in Philadelphia. During this traffic stop, the police made a routine computer check on the auto and discovered that it was listed as a stolen vehicle. Upon this discovery, Appellee was taken into custody and spent one night in jail before the police learned that the vehicle did in fact belong to Appellee. All charges were withdrawn and Appellee was released from custody.

¶ 3 It was subsequently discovered that the history of this vehicle was more interesting than Appellee knew. It was discovered that the vehicle had been stolen in 1996 from a prior owner. Following this theft in 1996, the Lower Merion Township Police Department made out a stolen vehicle report and entered the Mitsubishi into the National Crime Information Center database of stolen automobiles (NCIC). Following the vehicle being reported as stolen, State Farm, which was the insurer of the Mitsubishi at the time of the theft, paid the former owner the value of the car and then took title to the stolen vehicle.

¶ 4 Three years later, the Cheltenham Township Police Department recovered the stolen Mitsubishi. The vehicle was returned to State Farm as it was the record owner, and State Farm obtained a salvage title for the car. The vehicle was then sold at an auction and ultimately ended up for sale at P & H Auto Sales. Unfortunately, the car was never removed from the NCIC stolen vehicle database, and this was the reason for Appellee's arrest.

¶ 5 Following his arrest and subsequent release, Appellee filed suit against P & H Auto Sales, the sales person, Bucks County Auto Tags (where he registered the car), AIG Insurance Company (Appellee's insurer), and State Farm claiming violations of the Unfair Trade Practices and Consumer Protection Law (UTPCPL) and negligence. All defendants, except State Farm, settled this matter with Appellee prior to trial, and following a non-jury trial, the trial court found in favor of Appellee and against State Farm in the amount of $7,000. Post-trial motions were filed and denied, and this timely appeal followed.

¶ 6 On appeal, State Farm raises two claims: 1) that the trial court erred in ruling that State Farm owed a common law duty to Appellee to remove the Mitsubishi from the NCIC; and 2) that the trial court erred in permitting Appellee's witness to testify as an expert with respect to how State Farm should have verified that the car was removed from "stolen" status on the NCIC. We will address these issues in the order presented.

¶ 7 In Pennsylvania, the protocol for reporting stolen vehicles is governed by statute:

### § 7113. Reporting stolen and recovered vehicles

(a) Stolen vehicle.—Every police department or police office, having knowledge of a stolen vehicle, shall immediately furnish the State Police with full information about the stolen vehicle. The State Police shall forward the stolen vehicle information to the department.

(b) Recovered stolen vehicle.—Within 48 hours of the recovery or receiving notice of recovery of a stolen vehicle by the department to which the theft was originally reported, the police shall notify the owner of the vehicle. If the vehicle was recovered by a department other than the department to which the theft was originally reported, the department that recovered the vehicle shall promptly notify the department to which the theft was originally reported, which department in turn shall notify the owner. If the vehicle was recovered without their knowledge, the owner shall

notify the same police department to which the theft was originally reported. On recovering or receiving and verifying the report of recovery of a stolen vehicle, the police shall notify the State Police. The State Police shall notify the department of the recovery.

75 Pa.C.S.A. § 7113.

■ ¶ 8 Accordingly, the trial court ruled that no private right of action could be brought against State Farm. Trial Court Opinion, 07/21/2004, at 5. Additionally, the trial court found only a law enforcement agency could remove the stolen status, and communication from an insurer would be of no consequence.

According to the evidence presented at trial, a vehicle previously reported to NCIC as 'stolen' can only be removed from 'stolen' status by the law enforcement agency that originated the report. When a vehicle is recovered by a different law enforcement agency, the recovering agency is supposed to send a 'locate' message over the computer system to the reporting agency, so that the 'stolen' status can be cancelled.

In this case, it appears that Cheltenham failed to notify Lower Merion that the vehicle had been recovered, and that as a result, it was still listed as 'stolen' at the time that [Appellee] was stopped. *Id.* at 4. We find no error with respect to the trial court's findings, and we find this much of the trial court's decision to be legally sound.

■ ¶ 9 However, the trial court proceeded to find that State Farm was negligent under common law principles by failing to ensure that the car was removed from the NCIC prior to placing the car in the stream of commerce.

A person's liberty interest is the single most important right guaranteed by our Constitution. Because State Farm

returned a vehicle to the stream of commerce that was still listed as 'stolen' in the NCIC computer system, [Appellee] suffered an unjustified loss of his liberty interest. Though I realize that State Farm itself had no ability to clear the stolen status from NCIC, it certainly had the ability to verify that the vehicle was no longer listed as 'stolen' before offering the vehicle at auction.

I find that State Farm's actions in returning the vehicle to commerce without confirming its status created an unreasonable risk of arrest for [Appellee], and that—because [Appellee] was indeed arrested—State Farm should be held liable.

*Id.* at 5–6. We find the trial court's ruling with respect to common law negligence is misguided.

■ ¶ 10 In order for there to be an action at common law sounding in negligence, the alleged tortfeasor must first owe a duty to the allegedly injured party. *See Heritage Surveyors & Engineers, Inc. v. National Penn Bank,* 801 A.2d 1248, 1252 (Pa.Super.2002). Where there is no duty, there can be no negligence. *See id.*

■ ¶ 11 The legal concept of "duty" is rooted in public policy. *Atcovitz v. Gulph Mills Tennis Club, Inc.,* 571 Pa. 580, 588, 812 A.2d 1218, 1223 (2002). When determining whether or not a duty exists, our courts are to balance several discrete factors in determining whether a common law duty of care exists: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution. *Id.*

¶ 12 With respect to the first factor, it is clear that no special relationship existed

between State Farm and Appellee. State Farm sold the car through an auction pool to P & H Auto Sales. P & H Auto Sales then sold the car to Appellee. Accordingly, not only is there no special relationship, there is no relationship between the parties at all.

¶ 13 State Farm's conduct, or lack thereof, while perhaps serving no social utility, certainly does not create a duty either. Even if State Farm had contacted NCIC, the car would have remained in "stolen" status as only a police department can have the car removed. Accordingly, no social utility could be derived from State Farm performing the meaningless act of contacting NCIC.

¶ 14 Third, the risk involved is that a car which was reported stolen would remain in "stolen" status despite being recovered. This is precisely what happened in the instant case; however, the person or entity that created the risk is the police department responsible for removing the car from the NCIC. As for foreseeability, State Farm is too far removed from the transaction. While it is possible that the harm incurred is foreseeable, to impose a duty on State Farm based on this factor would "stretch foreseeability beyond the point of recognition [and] to do so will . . . make liability endless." *Estate of Witthoeft v. Kiskaddon,* 557 Pa. 340, 353, 733 A.2d 623, 630 (1999).

¶ 15 Fourth, the consequences of imposing a duty on the actor would be severe. Requiring insurers to expend additional time and resources to assure that every stolen car that is returned is properly removed from the NCIC would be costly and unnecessary. We find that it would be unnecessary because it would place insurers in an oversight position over this Commonwealth's law enforcement. In other words, the insurers would be expending time and money to assure that police departments perform their statutorily obligated duty.

¶ 16 Finally, the public interest in the solution is to have police departments discharge the aforementioned statutory obligation. While the public has an interest in knowing that the car that they are driving is not listed as a stolen vehicle, the safeguards are already present. Our elected officials in the General Assembly have mandated that law enforcement remove the vehicle from stolen status. To create a common law duty would be duplicative.

¶ 17 We certainly sympathize with Appellee's situation, and we agree with the trial court's discussion of the importance of an individual's liberty interest. Unfortunately, not every wrong suffered is compensable. Here, there was no duty owed Appellee by State Farm. As there is no duty, there can be no liability.

¶ 18 Because we have resolved this matter on the first issue presented, we need not reach the merits of the evidentiary issue State Farm raises in its second claim of error. It is not necessary to decide whether Appellee's expert was qualified to give the testimony he provided since we have determined that there was no duty on the part of State Farm.

¶ 19 For the reasons stated above, we reverse the judgment entered in favor of Appellee and against State Farm. We remand this matter to the trial court to enter judgment in favor of State Farm.

¶ 20 Judgment reversed. Case remanded with instructions. Jurisdiction relinquished.