# Murry v. Curotola

*Susan E. Mahood*, for plaintiff.
*Daniel P. Buzard*, for defendants.

HERTZBERG, *J.*, August 20, 2013—Plaintiff Susan Murry ("Ms. Murry") paid defendant Lawrenceville Motors $1,500 for a used car, but three months later the police seized the car from her because it had been reported as stolen. Defendant Joseph Curotola ("Mr. Curotola"), agent for Lawrenceville Motors, signed the application to transfer title to Ms. Murry, certifying that Lawrenceville Motors could sell the car. Mr. Curotola now appeals to the Superior Court of Pennsylvania from my non-jury verdict against him in the amount of $2,411.50, and this opinion provides the reasons for my verdict. *See* Pa. R.A.P. No. 1925(a).

This confusing story begins in August of 2006 when Evelyn Stanton ("Ms. Stanton") purchased the car, a 1996 Buick Regal, from Roland's Auto Sales ("Roland's") via an installment payment plan. When Ms. Stanton did

not make payments, Roland's sued her in December of 2006 and repossessed the car. The State Police listed the car as stolen on January 5, 2007, but Roland's assigned possession and title to Lawrenceville Motors on February 8, 2007. *See* Exhibit A. The lawsuit between Roland's and Ms. Stanton concluded in May of 2007 with Roland's being ordered to return the car to Ms. Stanton. Lawrenceville Motors, however, maintained possession of the car, and Ms. Murry attempted to buy the car, then driven at least 140,110 miles, from Lawrenceville Motors on January 4, 2008. The police contacted Ms. Murry and informed her the car had been stolen from a previous owner, and on March 27, 2008 the police came to Ms. Murry's home and towed the vehicle away. Ms. Murry contacted Mr. Curotola and told him what had happened, but Mr. Curotola said "there was nothing they could do about it." Transcript of non-jury trial of May 20, 2013 ("T." hereafter), p. 33.

Ms. Murry's complaint in the captioned proceedings contains a negligence claim against the defendants for not determining that the vehicle they sold to her was stolen. The defendants filed and served Ms. Stanton with a complaint against additional defendant that averred Ms. Stanton was exclusively responsible for Ms. Murry's damages because she falsely reported to the police that the car was stolen, when it had actually been repossessed.

I presided over the non-jury trial of the dispute on May 20, 2013. Ms. Stanton did not file a response to the complaint against additional defendant and she did not appear at trial. Five witnesses testified at trial and afterwards I entered a verdict against Lawrenceville

Motors, Mr. Curotola and Ms. Stanton for $2,411.50[1]. Lawrenceville Motors and Mr. Curotola filed a motion for post-trial relief, which I denied. Ms. Murry then entered judgment on the verdict. Mr. Curotola then filed a timely notice of appeal from the verdict and a concise statement of the errors complained of on appeal. I will address these alleged errors in chronological order rather than the order in which they appear in Mr. Curotola's concise statement of the errors complained of on appeal.

Because Ms. Stanton failed to respond to the defendants' complaint against her that alleged she falsely reported the car was stolen, Mr. Curotola argues I made an error by not holding her exclusively responsible for Ms. Murry's damages. *See* concise statement per PA.R.A.P. 1925(b), ¶no. 2. I interpret this as an argument that it was Ms. Stanton rather than Mr. Curotola who caused Ms. Murry's losses. However, my verdict against her was based exclusively on default from her failure to file a written response or to appear at trial. The only evidence against Ms. Stanton was the official record from *Roland's Auto Sales v. Evelyn Stanton*, No. AR07-001640 in the Court of Common Pleas of Allegheny County, which fails to establish that Ms. Stanton falsely reported to the police that the car was stolen.

That record shows Ms. Stanton purchased the car from Roland's in August of 2006 with Roland's retaining the title as lien holder. Roland's filed suit against Ms. Stanton with a magisterial district judge in December of 2006, then

---

1. This was the total paid by Ms. Murry for the car's purchase price, sales tax, title fee, registration fee and repair expenses.

appealed to the court of common pleas from judgment of $332 in its favor. Roland's averred that Ms. Stanton had not made any installment payments that were due, it had repossessed the car[2] and she owed it $1,445. Ms. Stanton averred in response that Roland's did not make repairs to the car that it had contracted to make and she was entitled to get possession of the car back from Roland's. The compulsory arbitration award dated May 21, 2007 is in favor of Ms. Stanton. It states that Roland's did not appear at the hearing and provides Ms. Stanton with possession of the car. Neither party appealed this award, therefore it is a final judgment giving Ms. Stanton legal title to the car. 75 Pa.C.S. §§1114(a) and 1106(c).

Mr. Curotola established that the Department of Transportation entered the stolen status on to its record of the car on January 5, 2007, the car was towed from Ms. Murry's residence on March 27, 2008 and the Department of Transportation listed the car as recovered on March 27, 2008. Only a police department may report to the State Police that a car was stolen, which results in the Department of Transportation recording it as stolen. *See* 75 Pa. C.S. §7113. But, there was no evidence presented at the trial of any communication by Ms. Stanton to the City of Pittsburgh Police, hence no evidence that when

---

2. I am puzzled about why a portion of the car's title history shows Ms. Stanton signing to transfer title back to Roland's on January 5, 2007. *See* Exhibit A. With Roland's listed on the certificate of title as first lien holder and repossession of the car, Roland's did not need Ms. Stanton's signature for a transfer. 69 P.S. §623D; 13 Pa.C.S. §§9609 and 9610. On January 5, 2007, Roland's and Ms. Stanton were engaged in litigation over the car, and it is not logical that Ms. Stanton would fight (and ultimately win) Roland's repossession in court and at the same time voluntarily sign the title to Roland's..

Roland's repossessed the car she falsely reported to the police that it was stolen. *See* testimony of Corporal Scott, T., pp. 65-67. There are ways other than Ms. Stanton making a false report for the car to have been listed by the Department of Transportation as stolen. For example, the police or Ms. Stanton's insurer may have decided to make the stolen car report. Therefore, Mr. Curotola's claim that Ms. Stanton's false report to the police that the car was stolen was the exclusive cause of Ms. Murry's loss has no merit.

Mr. Curotola's argument that Ms. Stanton was the exclusive cause of Ms. Murry's losses also requires analysis of the "factual cause" of harm. *See* Restatement (Third) of Torts, Chapter 5. Assuming the liability by default of Ms. Stanton establishes that she was a cause of harm, Mr. Curotola's conduct also is a factual cause if the harm would not have occurred absent his conduct. *Id.*, section C. If Mr. Curotola had complied with Pennsylvania law and applied for a certificate of title to the car within six months of Lawrenceville Motors purchasing it (further explained below), he would have found the vehicle was reported stolen and known he could not sell it to Ms. Murry. Since Ms. Murry would then not have been harmed absent Mr. Curotola's conduct, it is a factual cause sufficient to impose liability. It is Ms. Stanton's allegedly improper conduct, occurring eleven months before Ms. Murry dealt with Mr. Curotola, that is more remote from the harm than the conduct of Mr. Curotola. Therefore, if any conduct could be argued as "too far removed from the transaction," (*Salvatore v. State Farm*, 2005 PA Super 63,

869 A.2d 511, 515), it is that of Ms. Stanton. Accordingly, Ms. Stanton is not exclusively responsible for Ms. Murry's damages, and I made no error by finding Mr. Curotola also responsible.

Mr. Curotola also alleges I made an error in my verdict because Ms. Murry did not provide evidence to support the averment in the complaint that Mr. Curotola was an owner, officer, stock-holder and/or managing agent of Lawrenceville Motors. *See* concise statement per PA. R.A.P. 1925(b), ¶no. 1. Mr. Curotola testified that he was an independent contractor for Lawrenceville Motors, but I find this testimony is not credible. Ms. Murry testified credibly that she did not know Mr. Curotola's position with Lawrenceville Motors, but that he was the individual she dealt with when she purchased the car. T.pp. 33 and 47. Mr. Curotola's real position with Lawrenceville Motors, however, does not matter, because he was the authorized agent of Lawrenceville Motors who signed the Temporary Registration that contained this statement: "I/ WE CERTIFY THAT I/WE HAVE EXAMINED AND SIGNED THIS FORM AFTER ITS COMPLETION AND THAT THE INFORMATION GIVEN IS TRUE AND CORRECT." Exhibit P-2.

This certification by Mr. Curotola was incorrect as the temporary registration listed Lawrenceville Motors as the Seller when only the true owner, Evelyn Stanton, could sell the car. Had Mr. Curotola abided by the Pennsylvania Motor Vehicle Code and applied for a certificate of title to the car six months after its purchase (*see* 75 Pa.C.S. §1113), he would have known it was reported by the police

as a stolen car.[3] While Dominic Curotola, Mr. Curotola's father, testified that Mr. Curotola had no responsibility for title issues, this testimony was not credible[4]. In fact, neither Mr. Curotola nor Dominic Curotola, the owner of Lawrenceville Motors, ever identified an individual who had responsibility for title issues. Because Mr. Curotola was the only individual identified as responsible for preparing the paperwork for Lawrenceville Motors that is required by the Department of Transportation for transferring car titles, I find Mr. Curotola was responsible for title issues. In any event, by signing the temporary

---

3. The defendants also held the car for resale but did not provide a notice (form MV 27-A or B) to the Department of Transportation within seven days, which is an additional violation of 75 Pa.C.S.§1113. Pennsylvania State Police Corporal Fred Alex Scott testified that he did not know whether the filing of a form MV 27-A or B by Lawrenceville Motors would have resulted in a notice to Lawrenceville Motors that the car was reported stolen. T., pp. 59-62. Therefore, there is not enough evidence that this additional violation of 75 Pa.C.S. §1113 caused any loss to Ms. Murry.

The defendants argue 75 Pa.C.S.§1113 is inapplicable because the car was "repossessed upon default...." 75 Pa.C.S.§113(d). The defendants, however, are incorrect because this exception from the coverage of 75 Pa.C.S.§1113 applies only to the dealer who repossessed the car, which was not Lawrenceville Motors.

4. My finding that Dominic Curotola is not credible is based on his general demeanor and several instances of credibility problems during his testimony. For example, while his son testified Lawrenceville Motors sends all car title paperwork to the Department of Transportation through a messenger, Dominic Curotola testified sometimes he just mails the paperwork himself. T., pp. 76 and 106. Dominic Curotola also testified that Lawrenceville Motors bought the car at Tri-State Auto Auction, and the Auction runs all cars through an auto check to determine whether the car is stolen. T., pp. 100-101. However, had Tri-State Auto Auction done so when title was assigned to Lawrenceville Motors on February 8, 2007, it would have discovered the car was reported stolen on January 5, 2007 and called the State Police. Finally, when asked how the car had about 148,000 miles on it when Lawrenceville Motors bought it, but about 140,000 miles on it when sold to Ms. Murry about a year later (T. pp. 109-110 and 118-120), Dominic Curotola's excuses that the speedometer was broken or there was a typographical error, were not believable.

registration containing the certificate quoted above, Mr. Curotola accepted responsibility for title issues. If Mr. Curotola had exercised reasonable care by applying for a certificate of title six months after its purchase, he would have been notified the car was stolen. *See* 75 Pa.C.S. §§7113, 7114 and 1104, testimony of Pennsylvania State Police Corporal Fred Alex Scott at T., pp. 61-62 and testimony of Penndot representative Craig comp at T., pp. 97-98.

By signing the certification in the temporary registration, Mr. Curotola also warranted that "the title conveyed shall be good, and its transfer rightful...." 13 Pa. C.S. §2312(a)(1)[5]. This warranty of good title to personal property is the same as that given by warrantors of title to real estate. *Frank v. McCafferty Ford Company*, 192 Pa. Super 435, 161 A.2d 896 (1960). Mr. Curotola breached this warranty because the car was not owned by Lawrenceville Motors.

Mr. Curotola argues, citing *Estate of Duran*, 692 A.2d 176 (Pa. Super. 1997), that as an agent for a disclosed principal, he is not personally liable on a contract between the principal and a third party. The liability of Mr. Curotola, however, is not based upon him being a party to a contract. It is based on his negligence or his breach of warranty. Under either of these theories, Mr. Curotola does not escape liability because he was acting as an agent for a disclosed principal. Mr. Curotola's entire argument

---

5. While Ms. Murry's complaint does not contain a breach of warranty claim, she is not obligated to identify the legal theory underlying the complaint, that being the job of the judge. *See Weiss v. Equibank*, 313 Pa. Super. 446 at 453, 460 A.2d 271 at 275 (1983) *citing Delconte v. Stefonick*, 268 Pa. Super. 572, 408 A.2d 1151 (1979).

is premised on the distinction between him being an agent versus an employee of Lawrenceville Motors. This argument could be made against Lawrenceville Motors being vicariously liable for Mr. Curotola's actions. *See, e.g., Juarbe v. City of Philadelphia*, 431 A.2d 1073 at 1075-76 (Pa. Super. 1981). However, since Lawrenceville Motors has not appealed from the verdict against it, whether it is vicariously liable for Mr. Curotola's actions is meaningless. Since there is no issue of vicarious employer liability and no breach of contract claim, Mr. Curotola's allegation that he was an agent for a disclosed principal does not shield him from liability.

In summary, my verdict against Mr. Curotola was not erroneous as there was abundant evidence of his participation in the sale of the car to Ms. Murry.