IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ruth Byrd, : 
             Petitioner : 
                    : 
                    : 
      v. : 
                    : 
Unemployment Compensation : 
Board of Review, :   Nos. 1231, 1232, and 1233 C.D. 2019
             Respondent :   Argued: November 10, 2020


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge[1]
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE J. ANDREW CROMPTON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON         FILED: February 4, 2021

      Ruth Byrd (Claimant) petitions for review of three substantially similar orders of the Unemployment Compensation Board of Review (Board). The Board adopted and incorporated the findings of fact and conclusions of law of a Referee, who determined, after a hearing, that Claimant failed to file timely appeals from various notices of determination issued by the Department of Labor and Industry (Department). The Department found Claimant ineligible for unemployment compensation (UC) benefits, determined fault overpayments, and imposed related

---

[1] This case was assigned to the opinion writer before Judge Brobson succeeded Judge Leavitt as President Judge.

penalties. Claimant maintains she is entitled to *nunc pro tunc* relief deeming her appeals timely. Upon review, we reverse the Board's order denying *nunc pro tunc* relief and remand for determinations on the merits of Claimant's appeals.

## I. Background

The Department received the initial claim for UC benefits in this case on February 2, 2012. Certified Record (C.R.) Item 1 at 3, 15 & 25. The claim listed the separating employers as Watermark Services I LLC (Watermark), with a first day worked of July 14, 2010, and a last day worked of December 3, 2011, and Simpson House (Employer), with a first day worked of October 1, 2011, and a last day worked of December 31, 2011. *Id.* at 3, 15-16 & 25-26. On February 22, 2012, the Department determined Claimant had an eligible discharge from Watermark. *Id.* at 3, 17 & 27. The record shows that the Department paid UC benefits for the weeks of February 11, 2012, through August 4, 2012. *Id.* at 7-10, 18-21 & 31-34. On January 17, 2013, the Department sent Claimant a UC-1099 form reflecting payments totaling $6,604.00 in 2012. *Id.* at 2.

On February 1, 2013, the Department received a change of address for Claimant from the Philadelphia post office box address provided in the initial claim, to a street address in Upper Darby. *Id.* at 2. Claimant submitted a W-4 form to Employer dated April or May 1, 2013,[2] likewise reflecting a change of address to Upper Darby. C.R. Item 10, Transcript of Testimony, 4/12/19 (Tr.) at Ex. EE1.

In July 2017, more than five years after the initial filing of the UC claim, the Department sent Employer a questionnaire concerning possible unreported

---

[2] The numerals 4 (referring to April) and 5 (referring to May) both appear in the date on the W-4 and are superimposed, making the month uncertain. *See* Certified Record (C.R.) Item 10, Transcript of Testimony, 4/12/19 (Tr.) at Ex. EE1.

2

earnings by Claimant during her 2012 claim period. C.R. Item 2. Also in July 2017, the Department sent Claimant a similar questionnaire by mail to her Upper Darby address. C.R. Item 3. The questionnaire mailed to Claimant was not returned to the Department as undeliverable. *See* C.R. Item 1 at 1 & 13. The record does not reflect any reason for the Department's delay of five years in investigating Claimant's possible earnings during the 2012 claim period.

In response to the questionnaire, Employer verified that it had employed Claimant and that she had earned wages throughout the claim period. C.R. Item 2 at 3-13, 18-19 & 22-23. Claimant did not respond to the questionnaire. However, Claimant does not deny that she was in fact working for Employer and earning wages throughout the 2012 claim period; indeed, she denied having filed a UC claim, on the basis that she was employed. *See* Tr. at 16 ("I know that I didn't receive, I didn't file for no [sic] unemployment because I didn't need to, because I was working at [Employer]."), 22[3] ("I didn't need to take money and apply for unemployment if I'm [sic] working . . . . ").

After receiving Employer's questionnaire response, the Department mailed a series of notices of determination to Claimant in Upper Darby in July 2017, finding she was ineligible for the benefits paid in 2012, imposing liability for fault overpayments, and assessing penalties. C.R. Item 1 at 2. None of the notices was returned to the Department as undeliverable. *Id.* at 1. Claimant did not appeal any of the determinations within 15 days after they were mailed to her last known

---

[3] Page 22 is missing from the hearing transcript in the certified record. However, Claimant attached it to her brief and the Board has not objected. Accordingly, in the interests of justice, we will treat it as part of the record on appeal. *See Moyer v. PPL Elec. Utils. Corp.* (Pa. Cmwlth., No. 587 C.D. 2019, filed Oct. 23, 2020), slip op. at 9 n.11, 2020 Pa. Commw. Unpub. LEXIS 514, at *10 n.11 (unreported) (citing *M.A. Bruder & Son, Inc. v. Workmen's Comp. Appeal Bd. (Harvey)*, 485 A.2d 93, 95 n.2 (Pa. Cmwlth. 1984)). *Moyer* is cited as persuasive authority pursuant to this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

3

address, as required by Section 501(e) of the Unemployment Compensation Law (UC Law).[4] *See* Tr. at 9, 13 & 20; C.R. Item 11 at 1-2, 6-7 & 11-12.

From July 2017 to January 2019, the Department mailed a series of billing statements to Claimant in Upper Darby concerning the fault overpayments. C.R. Item 1 at 1-2. None of the billing statements was returned to the Department as undeliverable. *Id.* at 1.

In January 2019, the Department filed a lien against Claimant regarding the fault overpayments. *Id.* Claimant testified that she first learned of the determinations and the lien when she received a telephone call from a collection agent in February 2019 concerning the lien. Tr. at 11 & 14. She then contacted the Department and provided her current address and telephone number. C.R. Item 1 at 1. At that time, she told the Department she had moved several times since 2013 and had not received any of the notices of determination. C.R. Item 1 at 1.

On March 5, 2019, Claimant again contacted the Department about the overpayments and recoupment. C.R. at 1. She was told to file late appeals from the determinations. Tr. at 11. On March 6, 2019, Claimant filed appeals from the determinations. C.R. Item 1 at 1, Item 6.

The appeals were assigned to a Referee and were addressed in a single hearing. C.R. Items 8-9; Tr. at 1. The hearing notices listed several "specific issues to be considered" in the appeal, including both the timeliness and the merits of the appeals: whether Claimant filed timely appeals; whether Claimant was unemployed during the claim period; whether Claimant filed a valid application for UC benefits; whether Claimant was entitled to partial benefits for the claim period; whether Claimant received UC benefits for the claim period to which she was not entitled;

_____

[4] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 821(e).

and whether Claimant knowingly made a false statement or failed to disclose a material fact in order to obtain UC benefits, such that she was subject to a period of disqualification from UC benefits or a monetary penalty. C.R. Item 9 at 1, 5, 9, 20, 28 & 36. Subsequently, at the hearing, the Referee also explained to the parties that they should present evidence on the merits as well as on the timeliness issue, as there would be only one hearing to address both the timeliness issue and the merits. Tr. at 4-5. No party objected or asserted any prejudice related to addressing the merits at the same hearing as the timeliness issue. *See id.*

Regarding timeliness, Claimant did not dispute that she was working for Employer throughout the claim period of the 2012 UC claim. *See* Tr. at 16 (Claimant's statement that she did not file for UC benefits in 2012 because she was working for Employer), 22 (Claimant's statement that she had no need for UC benefits because she was working) & 23 (Employer's witness testified Claimant was working for Employer during 2012). However, she denied either applying for or receiving any UC benefits in 2012. Tr. at 13-16, 19-22. She testified that she moved multiple times after she relocated to Upper Darby, and as a result, she did not receive any notices the Department mailed to Upper Darby starting in 2017. *See* Tr. at 17 (Claimant's proof of address from April 2015 showed a different address) & 18 (Claimant resided at yet another address in 2014 and still another beginning in 2016). She contended that, having filed no UC claim and collected no benefits in 2012, she had no reason to provide the Department with subsequent changes to her address and telephone number. *See* Tr. at 13-14.

On the merits, Claimant repeated her denial that she filed a UC claim or collected benefits in 2012, although she stated she had no proof that she did not receive deposits of UC benefits in her bank account in 2012. Tr. at 15 & 21-22. She

5

also denied knowledge of who might have opened a UC claim in her name. Tr. at 15.

Following the hearing, the Referee issued findings and conclusions and determined that Claimant's appeals were untimely. C.R. Item 11. Claimant appealed to the Board, which adopted and incorporated the Referee's findings and conclusions and affirmed the Referee's decision. C.R. Item 14. Acknowledging that Claimant moved from Upper Darby by 2016, the Board nevertheless found Claimant's failure to receive the notices of determination mailed by the Department in 2017 was due to her own negligence in failing to update the Department concerning her changes of address. *Id.* at 1, 10 & 19. The Board noted Claimant's assertion that the 2012 UC claim resulted from identity theft, but nonetheless implicitly imposed a duty on Claimant to inform the Department of her various changes of address over the ensuing years. *Id.* Like the Referee, the Board credited the testimony of Employer's witness that he had informed Claimant when he received questionnaires from the Department concerning her 2012 UC benefits in July 2017, before the Department sent the notices of determination. *Id.* Finally, the Board rejected Claimant's argument that the Department's delay of five years in investigating the 2012 UC claim constituted an administrative breakdown entitling her to *nunc pro tunc* relief. *Id.* Positing that the Department has no time limit to issue notices of determination, the Board concluded that a delay alone did not constitute an administrative breakdown. *Id.*

Claimant then petitioned for review in this Court.

6

## II. Issues

On appeal,[5] Claimant observes that the Department offered no explanation for its delay of five years in investigating the 2012 UC claim. She contends that such a lengthy unjustified delay constituted an administrative breakdown justifying her appeal *nunc pro tunc*. Claimant also insists she was not negligent in failing to update her address with the Department. She argues she did not file the 2012 UC claim and therefore had no reason to anticipate that the Department would be sending her time-sensitive documents relating to such a claim. She also claims that, because the Department mailed the notices of determination to an address where she no longer resided, she was improperly denied her right of appeal.

## III. Discussion

### A. Delay in Issuing Notices of Determination

Section 501 of the UC Law provides, in pertinent part:

> (a) The [D]epartment *shall promptly examine each application for benefits* and on the basis of the facts found by it shall determine whether or not the application is valid. Notice shall be given by the [D]epartment in writing to the [C]laimant and each base-year employer of the [C]laimant. . . .

---

[5] Claimant bore the burden of establishing the timeliness of her appeals from the notices of determination. *Wright v. Unemployment Comp. Bd. of Rev.*, 41 A.3d 58 & 62 n.5 (Pa. Cmwlth. 2011). Our standard of review concerning the Board's decision and order on the timeliness of an appeal from the Department's notice of determination is limited to determining whether the Board committed an error of law, whether constitutional rights were violated, or whether necessary findings of fact were supported by substantial evidence. *Bowman v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 1589 C.D. 2009, filed Feb. 22, 2010), slip op. at 3 n.3, 2010 Pa. Commw. Unpub. LEXIS 106, at *3 n.3 (unreported) (citing *Hessour v. Unemployment Comp. Bd. of Rev.*, 942 A.2d 194 (Pa. Cmwlth. 2008)).

7

(b) *Notice shall be given in writing to the last employer*[6]
of the [C]laimant stating that an application has been filed
by the designated employe.

43 P.S. § 821(a) & (b) (italics added).

Here, the record reflects that the Department conducted no examination of the 2012 UC claim other than its 2012 verification of Claimant's 2011 separation of employment *from Watermark* and its 2017 questionnaire to Employer. *See* C.R. Item 1 at 3, 15, 17 & 27; C.R. Items 2-3. Specifically, although the record reflects that the Department sent a questionnaire in 2012 to Watermark, Claimant's base-year employer, there is no indication that Employer, Claimant's last employer, was provided with notice of her alleged claim for UC benefits as required by Section 501(b) of the UC Law. Thus, there is no indication in the record that the Department attempted to verify Claimant's alleged separation from Employer in 2012, or at any other time prior to mid-2017. Further, the record contains no explanation by the Department for its five-year delay in pursuing its examination of the claim.

*Nunc pro tunc* relief allowing a UC claimant's untimely appeal may be permitted where the delay in filing the appeal is the result of extraordinary circumstances involving fraud, administrative breakdown, or non-negligent conduct of the claimant or a third party. *Mountain Home Beagle Media v. Unemployment Comp. Bd. of Rev.*, 955 A.2d 484 (Pa. Cmwlth. 2008); *see also Rude v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 184 C.D. 2010, filed Sept. 20, 2010), slip op. at 3-4, 2010 Pa. Commw. Unpub. LEXIS 640, at *5 (unreported) (citing *Cook v. Unemployment Comp. Bd. of Rev.*, 671 A.2d 1130 (Pa. 1996) and *Mountain Home Beagle Media*). Negligence by an administrative official may be equivalent to fraud for purposes of justifying *nunc pro tunc* relief. *Rude*, slip op. at

---

[6] Here, Watermark was the base-year employer and Employer was the last employer.

4 (citing *Stana v. Unemployment Comp. Bd. of Rev.*, 791 A.2d 1269 (Pa. Cmwlth. 2002)).

Here, Claimant contends the Department was negligent by reason of its five-year delay in issuing the notices of determination. As a result, because Claimant had moved multiple times in the interim, the Department did not provide the requisite notices of its determinations, having mailed them to the wrong address. We agree.

The Board argues that the Department was not negligent because there is no specific time limit under the UC Law for the Department to issue a determination concerning a claim for UC benefits. This Court rejected the same argument in *Ruffner v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1566 C.D. 2016, filed June 22, 2017), 2017 Pa. Commw. Unpub. LEXIS 452 (unreported). Based on the Department's duty of prompt examination, we concluded in *Ruffner* that the absence of a specific time limit for claim determinations in the UC Law does not mean the Department "has forever to evaluate a claim." *Id.*, slip op. at 6-7, 2017 Pa. Commw. Unpub. LEXIS 452, at *9 (distinguishing *Grimm v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 2265 C.D. 2014, filed Oct. 28, 2015), 2015 Pa. Commw. Unpub LEXIS 781 (unreported) (claimant waived five-month delay in reversing a decision to award UC benefits, and moreover, the Department was conducting its investigation during the five-month period)). We concluded that the unexplained delay of 19 months in *Ruffner* between the claimant's application for UC benefits and the Department's determination of ineligibility and fault overpayment failed to comply with the Department's obligation of prompt examination of the UC claim pursuant to Section 501 of the UC Law, thus

9

necessitating a remand to address the claimant's assertion of prejudice arising from the delay. *Ruffner*, slip op. at 7-9, 2017 Pa. Commw. Unpub. LEXIS 452, at *9-11.

We find our reasoning in *Ruffner* persuasive here. Because Employer was listed as a separating employer along with Watermark in the initial UC claim information, the Department was or should have been aware of the need to examine the claim in relation to Claimant's purported separation from Employer as well as Watermark. However, the record does not reflect any notice to Employer concerning the UC claim in 2012 as required by Section 501(b) of the UC Law. We conclude that the Department's delay of five years before investigating the 2012 status of Claimant's employment with Employer did not constitute a prompt examination of the claim as required by Section 501(c) of the UC Law, 43 P.S. § 821(c). In addition, in light of Claimant's denial that she ever filed the 2012 UC claim or received UC benefits under that claim, we agree with Claimant that the Department's unexplained five-year delay in investigating that claim justifies *nunc pro tunc* relief allowing consideration of the merits of Claimant's appeals, including Claimant's assertion of prejudice arising from the Department's delay.[7]

**B. Delay in Receiving Notices of Determination**

The Board also posits that Claimant's failure to receive until 2019 the notices of determination that were issued in 2017 was her own fault because she failed to keep the Department up to date on her various changes of address. The Board is correct that, in general, mailing a notice of determination to a claimant's last known address gives rise to a presumption of receipt if the notice is not returned as undeliverable. *See Gaskins v. Unemployment Comp. Bd. of Rev.*, 429 A.2d 138,

---

[7] To the extent Claimant's assertion of prejudice relates to her failure to receive the 2017 notices of determination so as to file timely appeals, that prejudice is cured by our decision reversing the Board's denial of *nunc pro tunc* relief.

10

140 (Pa. Cmwlth. 1981). The burden is then upon the claimant to show failure to receive the notice as a result of wrongful or negligent conduct by administrative authorities. *Id.* (evidence that notice was mailed to claimant's last known address and not returned as undeliverable shifts the burden of proof to claimant to prove lack of notice; Board need not accept even unrebutted evidence from claimant).

Here, however, the evidence demonstrated that the Department sent the notices of determination to an address that was no longer current. As discussed above, the Department did not act with requisite promptness when it failed to investigate the UC claim until five years after the benefits ended. We discern no basis to impose a duty upon Claimant to continue updating her address for five years after the end of the UC claim. Therefore, the Board erred in applying the presumption of receipt in these circumstances.[8]

Decisions of this Court that may appear to be to the contrary are distinguishable. In *Reviello v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1317 C.D. 2008, filed July 20, 2009), 2009 Pa. Commw. Unpub. LEXIS 127 (unreported), the claimant moved because of a divorce in 2000 and failed to notify the Department, although he filed a forwarding address with postal authorities. He allegedly did not receive a notice of determination regarding an overpayment, which the Department mailed to his previous address in April of 2001. However, the claimant contacted the local UC Service Center in October 2001 and

---

[8] Applying the presumption of receipt would be particularly unfair here, where Claimant has consistently averred that she never filed the 2012 claim, never collected UC benefits in 2012, and never provided the Ashton Road address to the Department. If credited by the Board, those averments would eliminate any duty to provide the Department with her current address each time she moved, as Claimant would have had no pending claim before the Department and no reason to anticipate that the Department might need to contact her. In any event, we decline to hold that a UC claimant must keep the Department informed of address changes several years after her claim period has ended.

11

again in September 2003 about appealing the determination, thus demonstrating his receipt of the notice of determination. On neither occasion did the claimant update his address with the Department. He did not provide his new address until 2006, and ultimately did not file an appeal until 2008. This Court affirmed the Board's conclusion that the appeal was untimely, observing that mere averment of nonreceipt is insufficient to rebut the presumption of delivery. *Id.*, slip op. at 5-6, 2009 Pa. Commw. Unpub. LEXIS 127, at *6-7.

Here, however, Claimant offered more than a mere averment that she did not receive the notices of determination. She presented evidence of her several moves, along with her testimony that she did not initiate the 2012 UC claim or receive any UC benefits as a result of that claim. Thus, Claimant provided facts that, if credited by the Board, would negate any duty to provide the Department with address updates. Moreover, Claimant offered evidence that she acted promptly upon learning of the lien imposed by the Department, unlike the claimant in *Reviello*, who waited seven years after learning of the Department's determination of an overpayment before seeking to appeal that determination.

*Duhigg v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 412 C.D. 2017, filed Dec. 13, 2017), 2017 Pa. Commw. LEXIS 1101 (unreported), is also inapplicable. In *Duhigg*, the claimant moved several months after the end of her claim year and did not provide the Department with her new address. As a result, she did not receive notices of determination of fault overpayments sent several years later to her old address. Rejecting her assertion of administrative breakdown to defend her untimely appeal, this Court found that regardless of when she moved, the claimant was responsible to notify the

12

Department of her change of address.  *Id.*, slip op. at 6, 2017 Pa. Commw. LEXIS 1101, at *6-7.

Critically, however, the claimant in *Duhigg*, like the *Reviello* claimant, admitted filing a UC claim and failing to promptly provide the Department with her new address when she moved.  *Id.*, slip op. at 2, 2017 Pa. Commw. LEXIS 1101, at *1-2.  Moreover, although she did not receive the notices of determination, she did receive a letter several months later at her new address concerning a fault overpayment, and she still did not appeal the determinations until 41 days after receiving that letter.  *Id.*, slip op. at 2-3, 2017 Pa. Commw. LEXIS 1101, at *2-3. We therefore find *Duhigg* distinguishable from this matter, where Claimant (1) consistently testified that she never filed the 2012 UC claim or received UC benefits under that claim, and (2) filed her appeals within 15 days of learning of the determinations of fault overpayments.  If the Board credits Claimant's testimony on remand,[9] Claimant will have had no duty to provide the Department with her new address each time she moved.

In *Ferraro v. Unemployment Compensation Board of Review*, 464 A.2d 697 (Pa. Cmwlth. 1983), the claimant initially received UC benefits, but a subsequent investigation revealed she had been a full-time student and was also employed during the period for which the benefits were paid.  The claimant appeared and testified at a hearing concerning that issue.  Several months later, a notice scheduling an interview was mailed to the claimant, but she failed to attend the interview.  She was determined ineligible for benefits and subject to a fault recoupment.  She failed to file a timely appeal, later contending she did not receive

---

[9] Neither the Referee nor the Board made any findings concerning the merits, including Claimant's assertion that she never filed the 2012 UC claim or received UC benefits from that claim.

13

the notice of determination concerning the fault recoupment because she had moved. This Court found the delay in the claimant's receipt of the notice of determination was the result of her own delay in notifying the Department or postal authorities of her change of address. *Id.* at 699.

*Ferraro* is inapplicable here. The claimant in that case indisputably applied for and received UC benefits. Further, she moved during a period when she was aware that an investigation was underway concerning her eligibility for those payments. Neither circumstance is present here.

In short, under the facts of this case, we conclude that no presumption of receipt applies to the notices of determination the Department mailed to Claimant at an incorrect address in 2017.

## IV. <u>Conclusion</u>

Based on the foregoing discussion, we reverse the Board's orders denying *nunc pro tunc* relief. We remand this matter to the Board for determinations on the merits of Claimant's appeals.

_____<br>
CHRISTINE FIZZANO CANNON, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ruth Byrd,                                    :
             Petitioner              :
                                           :
      v.                                  :
                                           :
Unemployment Compensation       :
Board of Review,                          :    Nos. 1231, 1232, and 1233 C.D. 2019
             Respondent            :

## O R D E R

AND NOW, this 4th day of February, 2021, the orders of the Unemployment Compensation Board of Review denying *nunc pro tunc* relief are REVERSED. This matter is remanded to the Board for determinations on the merits of Ruth Byrd's appeals.

Jurisdiction is relinquished.

_____
CHRISTINE FIZZANO CANNON, Judge

Ruth Byrd,                                 :
                    Petitioner            :
                                          :
        v.                                :     Nos. 1231, 1232 and 1233 C.D. 2019
                                          :     Argued: November 10, 2020
Unemployment Compensation                 :
Board of Review,                          :
                    Respondent            :

BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge
            HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

CONCURRING OPINION
BY PRESIDENT JUDGE LEAVITT                         FILED: February 4, 2021

        I agree with the majority's conclusion that Ruth Byrd (Claimant) is
entitled to *nunc pro tunc* relief because the Department of Labor and Industry's
(Department) unjustified five-year delay in investigating unemployment
compensation claims constituted an administrative breakdown. I write separately,
however, to stress that the Unemployment Compensation Law[1] imposes no duty on
Claimant to update her address with the Department years after her claim period has
ended.

        The Unemployment Compensation Board of Review (Board) posits
that Claimant was at fault for not receiving the notices of determinations issued in

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§751-919.10, 919.101-919.105.

2017 because she did not inform the Department each time she moved after her claim ended in 2012.[2] The Board relies on Section 501(e) of the Unemployment Compensation Law, which states:

> (e) Unless the claimant or last employer or base-year employer of the claimant files an appeal with the board, from the determination contained in any notice required to be furnished by the department under section five hundred and one (a), (c) and (d), *within fifteen calendar days after such notice was delivered to him personally, or was mailed to his last known post office address*, and applies for a hearing, such determination of the department, with respect to the particular facts set forth in such notice, shall be final and compensation shall be paid or denied in accordance therewith.

43 P.S. §821(e) (emphasis added).

A fair reading of Section 501(e) suggests that a claimant who has an open claim for unemployment benefits may not raise non-receipt of a determination as an excuse for filing an untimely appeal if she failed to notify the Department of her new address. However, it is a bridge too far to read the term "last known post office address" to signify a mandate that any person who ever interacted with the unemployment compensation system must keep the Department informed of every address change after benefits have ceased, by virtue of the claimant's return to the workplace, or have been exhausted.

It is evident when looking at other statutes that the legislature knows how to impose a duty to report address changes when it wishes. Subchapter I of the Sexual Offender Registration and Notification Act,[3] for example, requires sex

---

[2] Of course, Claimant asserts she did not submit the 2012 claim that prompted the Unemployment Compensation Service Center's actions.

[3] 42 Pa. C.S. §§9799.10-9799.75.

MHL-2

offenders, upon their release from incarceration, to provide the Pennsylvania State Police with information about their current or intended residences, employment, and enrollment as a student. 42 Pa. C.S. §9799.56(a)(1)(iii). In addition, offenders must notify the State Police "within three business days of" any changes in residence, employment or employment location, or enrollment status in an educational institution. 42 Pa. C.S. §9799.56(a)(2). Likewise, Section 1515(a) of the Vehicle Code provides that "[w]henever any person after applying for or receiving a driver's license moves from the address named in the application or in the drivers' license issued …, such person shall, within 15 days thereafter, notify the [Department of Transportation] of the old and new addresses[.]" 75 Pa. C.S. §1515(a).

By contrast, the Unemployment Compensation Law imposes no such duty on an individual who once applied for unemployment benefits. When there is no duty, there can be no negligence. *See Salvatore v. State Farm Mutual Automobile Insurance Company*, 869 A.2d 511, 514 (Pa. Super. 2005). For this reason alone, the Board erred in holding that Claimant was in any way negligent for not updating her address with the Department five years (or more) after she ceased to collect unemployment benefits.

_____
MARY HANNAH LEAVITT, President Judge

MHL-3